## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 24 2016, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gerald Rachell,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

August 24, 2016

Court of Appeals Case No.
49A04-1601-CR-107

Appeal from the Marion Superior Court

The Honorable David Hooper, Magistrate

Trial Court Cause No.
49G25-1509-F6-33708

**Bailey, Judge.**

# Case Summary

[1] After a bench trial, Gerald Rachell ("Rachell") was convicted of Criminal Trespass, as a Class A misdemeanor.[1] He now appeals.

[2] We affirm.

# Issue

[3] Rachell raises two issues for our review, which we restate as the single issue of whether there was sufficient evidence to sustain his conviction.

# Facts and Procedural History

[4] On September 15, 2015, Rachell was at the 16 Park Apartments ("16 Park") housing complex in Indianapolis. Central Indiana Protection Agency ("CIPA") had been retained by 16 Park to provide security at the complex. Someone at the complex reported a disturbance. Two of CIPA's security guards, Edward Rodriguez ("Rodriguez") and Devon Williams ("Williams"), responded. Upon investigation, they encountered Rachell. Rodriguez and Williams asked Rachell whether he had leased an apartment at 16 Park. Rachell answered that he had not, but that he lived in an apartment there. 16 Park's policies generally disallowed subleasing of apartments.

---

[1] Ind. Code § 35-43-2-2(b)(1). This statute was revised, effective July 1, 2016. We refer throughout to the statute in effect at the time of Rachell's offense.

[5]     Rodriguez told Rachell that since he was not a resident, he did not have permission to be at the complex, and gave Rachell a trespass notice. The trespass notice recorded Rachell's address from his driver's license as located somewhere other than 16 Park, indicated that the incident warranting notice of trespass was "doesn't live on property and is intoxicated," and informed Rachell that he was "BARRED from physically entering" the complex. (Ex. 1) Rodriguez signed the notice as the issuing officer, and Williams signed the notice as a witness. Rachell refused to sign an acknowledgment of having received a trespass notice.

[6]     On September 16, 2015, Williams again encountered Rachell at 16 Park. Williams asked Rachell why he had returned, to which Rachell replied that he had come back because he was getting some of his belongings from an apartment in the complex. Police were called to the scene, and Indianapolis-Marion County Police Officer Michael Rodriguez ("Officer M. Rodriguez") encountered Williams and another security guard, who were with Rachell.

[7]     Officer M. Rodriguez asked Rachell whether he had "any invested interest into the apartment," and Rachell said he did not. (Tr. at 37.) Rachell again stated that he had clothing inside one of the residences, but did not tell Officer M. Rodriguez that he was subletting an apartment. At the end of the police officers' inquiries, Rachell was arrested.

[8] On September 21, 2015, Rachell was charged with Residential Entry, as a Level 6 felony,[2] and Criminal Trespass. On December 22, 2015, the Residential Entry charge was dismissed, and the Criminal Trespass charge proceeded to a bench trial. At the conclusion of the trial, the court found Rachell guilty of Criminal Trespass, as charged, and entered judgment against him.

[9] A sentencing hearing was conducted on December 29, 2015, at the conclusion of which the court sentenced Rachell to 210 days imprisonment with 105 days of credit for time served.

[10] This appeal ensued.

# Discussion and Decision

[11] Rachell challenges the sufficiency of the evidence for his conviction, after a bench trial, for Criminal Trespass, as a Class A misdemeanor. Our standard of review in such cases is well-settled:

> This court will not reweigh the evidence or assess the credibility of witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028 (Ind. Ct. App. 2002). Only the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom will be considered. *Id.* If a reasonable trier of fact could have found the defendant guilty based on the probative

---

[2] I.C. § 35-43-2-1.5.

evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. *Id.* at 1028–29.

*Sargent v. State*, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007).

[12] Rachell was charged with Criminal Trespass under Indiana Code section 35-43-2-2(b)(1). To obtain a conviction, the State was required to prove beyond a reasonable doubt that Rachell, not having a contractual interest in the property at 16 Park, knowingly or intentionally entered the property after having been denied entry by 16 Park or its agents. *See* I.C. § 35-43-2-2(b)(1); App'x at 17. The offense has seven elements: "the defendant (1) knowingly or intentionally (2) refused to leave (3) the real property (4) of another person (5) after having been asked to leave (6) by the person or the person's agent (7) when such defendant lacked a contractual interest in the real property." *Lyles v. State*, 970 N.E.2d 140, 142-43 (Ind. 2012). Rachell challenges his conviction on two of the elements of the statute: whether there was sufficient evidence that he lacked contractual interest in the property, and whether there was sufficient evidence that the security guards were agents of 16 Park.

[13] We first address the contractual interest element of Criminal Trespass. The General Assembly and the Indiana Supreme Court have not directly defined what constitutes a contractual interest in real property for purposes of the statute. *Id.* at 143 n.2. This Court has defined a contractual interest as "the right to be present on another's property, arising out of an agreement of at least two parties that creates an obligation to do or not do a particular thing." *Taylor v. State*, 836 N.E.2d 1024, 1026 (Ind. Ct. App. 2005), *trans. denied*. Moreover, to

obtain a conviction, "the State need not disprove every conceivable contractual interest that a defendant might have obtained in the real property at issue." *Lyles*, 970 N.E.2d at 143 (citations and quotations omitted).

> Thus…some contractual interests need not be disproven because they do not create any *reasonable* doubt that a defendant lacks a contractual interest in the property. For this reason, the State satisfies its burden when it disproves those contractual interests that are reasonably apparent from the context and circumstances under which the trespass is alleged to have occurred.

*Id.*

[14] At trial, Rodriguez testified that when he first encountered Rachell at 16 Park on September 15, 2015, he asked Rachell whether he lived at the complex; Rachell, Rodriguez testified, said he did not live there. (Tr. at 14.) Rodriguez asked Rachell whether he was on a lease at the complex, and Rachell denied having a lease. Rodriguez further testified that when he asked Rachell to leave, he refused to do so, and as a result Rodriguez and Williams issued Rachell a written notice of trespass and told him not to return to 16 Park. Williams also testified at trial, and while his testimony differed from Rodriguez's concerning whether Rachell stated that he lived at 16 Park, Williams also testified that Rachell denied having a lease. Williams further testified that, after he and Rodriguez gave Rachell the trespass notice, Rachell acknowledged that he knew he was not permitted to return to the complex. (Tr. at 27-28.) In addition, the notice of trespass reflects an address for Rachell at a location other than a unit at 16 Park. (Ex. 1.) On the following day, Rachell acknowledged to

Officer M. Rodriguez that he did not have "any invested interest" in an apartment (Tr. at 37), and did not assert that he had a sublease for an apartment.

[15] Despite this evidence, Rachell argues that "[t]he record clearly supports [his] claim of a contractual interest in the 16 Park Apartments." (Appellant's Br. at 10.) He points to testimony from his mother that she had subleased space under an oral agreement from a relative, Ebony Dixon ("Dixon"), and that under that oral agreement Rachell occupied a specific room in Dixon's unit. However, the State adduced testimony from Rodriguez that 16 Park had a general policy prohibiting tenants from subleasing their apartments to others. Moreover, Rachell's mother testified that Dixon received Section 8 public housing assistance, raising the possibility that any sublease was impermissible in that context, as well.[3] Thus, to the extent Rachell presents contentions about an oral sublease, though one without any evidence of a waiver of the general policy of 16 Park precluding subleases, Rachell invites this Court to second-guess the trial court's weighing of the evidence and credibility determinations. We cannot do so, *Sargent*, 875 N.E.2d at 767, and conclude that there was sufficient evidence adduced at trial that Rachell lacked a contractual interest in the property.

---

[3] We note that the trial court was circumspect in *sua sponte* advising Rachell's mother that she might be incriminating herself with respect to a charge of welfare fraud, and informing her that she was entitled to counsel before testifying. Rachell's mother declined the offer of counsel and said she was "fine with [her] testimony." (Tr. at 48.)

[16]    We turn now to the question of whether there was sufficient evidence with respect to the agency element of the Criminal Trespass statute. Rachell contends there was insufficient evidence that Rodriguez and Williams were agents of 16 Park with authority to request that Rachell leave the property. This Court has previously addressed the question of agency in the context of the Criminal Trespass statute in *Glispie v. State*, 955 N.E.2d 819 (Ind. Ct. App. 2011). The *Glispie* Court identified the elements of agency as: "(1) manifestation of consent by the principal, (2) acceptance of authority by the agent, and (3) control exerted by the principal over the agent." *Id.* (quoting *Demming v. Underwood*, 943 N.E.2d 878, 883 (Ind. Ct. App. 2011)). Agency may be proved by circumstantial evidence, and there is no requirement that the agency be proved by a writing. *Id.* (citing *Demming*, 943 N.E.2d at 883).

[17]    In *Glispie*, this Court reversed Glispie's conviction for Criminal Trespass because the sole item of evidence of agency was the arresting officer's "testimony that he 'could act as an agent of the property.'" *Id.* at 822 (citing trial transcript). This was held to be insufficient evidence of agency. Rachell argues that the holding in *Glispie* compels the same result here.

[18]    We disagree. The evidence at trial included testimony from both Rodriguez and Williams that, serving in their capacity as paid employees of CIPA, they had been given authority to notify individuals that they had trespassed at 16 Park. While taken alone, this might be insufficient evidence under the holding in *Glispie*, this is not the only evidence in the record of Rodriguez's and Williams's authority. Rodriguez and Williams testified that they had been

dispatched to 16 Park to investigate a resident's report of a disturbance of some sort on both September 15 and 16, 2015. Moreover, in response to questions from Rachell upon Rachell's hearsay objection concerning Rodriguez's statement that he had authority to issue notices of trespass, Rodriguez testified that "They [16 Park] pay CIPA. They [CIPA] pay us," and Rachell's objection to the question of authority was overruled.[4] (Tr. at 10.) That is, Rodriguez acknowledged that he was not employed by 16 Park, but testified that 16 Park had contracted with CIPA for security services, and CIPA in turn employed him and Williams.

[19] Unlike in *Glispie*, then, there is more evidence than simply a lone officer's assertion that he was authorized to arrest a trespasser. We accordingly conclude there was sufficient evidence of agency.

# Conclusion

[20] There was sufficient evidence presented at trial on the contractual interest and agency elements to sustain Rachell's conviction for Criminal Trespass.

[21] Affirmed.

Riley, J., and Barnes, J., concur.

---

[4] Rachell does not challenge that evidentiary ruling on appeal.