**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 15 2013, 9:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEES:

Attorney for Richard Cart, d/b/a
Cart's Creative Designs

**ROBERT L. HOUSTON**
Houston and Thompson, P.C.
Scottsburg, Indiana

Attorneys for Deutsche Bank National Trust
Company, as Trustee for holders of
IMPAC Secured Assets, Corp.

**KURT V. LAKER**
Doyle Legal Corporation, P.C.
Indianapolis, Indiana

**NEAL BAILEN**
Stites & Harbison, PLLC
Jeffersonville, Indiana

Attorneys for Encore Credit Corp.

**JON LARAMORE**
**LOUIS T. PERRY**
Faegre Baker Daniels LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

NORMA E. SINGO, individually, and NORMA )
E. SINGO, as Trustee of the Revocable Trust of )
Norma E. Singo, )
  )
    Appellants-Defendants and Third-Party )
    Plaintiffs, )

|  |  |  |
|---|---|---|
| vs. | ) | No. 39A01-1202-MF-48 |
|  | ) |  |
| DEUTSCHE BANK NATIONAL TRUST | ) |  |
| COMPANY AMERICAS, as Trustee for holders | ) |  |
| of IMPAC Secured Assets Corp., Mortgage Pass- | ) |  |
| Through Certificates, Series, 2004-3, | ) |  |
|  | ) |  |
| Appellee-Plaintiff, | ) |  |
|  | ) |  |
| And | ) |  |
|  | ) |  |
| FRED SHIMFESSEL,[1] RICHARD CART, d/b/a | ) |  |
| CART'S CREATIVE DESIGNS and ENCORE | ) |  |
| CREDIT CORP., | ) |  |
|  | ) |  |
| Appellees-Third Party Defendants. | ) |  |

---

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Roger L. Duvall, Special Judge
Cause No. 39C01-0806-MF-439

---

**January 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Norma E. Singo ("Singo"), individually and as Trustee of the Revocable Trust of

Norma E. Singo ("the Trust"), appeals from the trial court's order granting summary

judgment in favor of Deutsche Bank National Trust Company Americas, as trustee for

holders of IMPAC Secured Assets Corporation, Mortgage Pass-Through Certificates, Series

2004-3 ("Deutsche Bank") and Encore Credit Corporation ("Encore"), and granting partial

---

[1] Fred Shimfessel has not filed a brief in this appeal. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

2

summary judgment in favor of Richard Cart ("Cart"), d/b/a Cart's Creative Designs.  Singo

presents the following issues for our review:

I.      Whether the trial court erred by granting summary judgment and
        contract reformation to Deutsche Bank;

II.     Whether the trial court erred by granting summary judgment to Encore
        and Shimfessel; and

III.    Whether the trial court erred by granting summary judgment to Cart
        when there was a genuine issue of material fact as to the claim of fraud.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Singo met Cart in late 1997.  Cart was involved in construction work, doing business

as Cart's Creative Designs, and began work for Singo on her home on Mulberry Street in

Madison, Indiana in 1998.   Thereafter, Singo and Cart entered into a series of oral

agreements whereby Singo would obtain funds and lend those funds to Cart, who would use

them to build and sell houses for profit.  Although the exact amount of the profit and how it

was split was unclear from the record, the agreement was that Singo would share in the

profit.

To obtain the funds to lend to Cart over time, Singo borrowed money from various

financial institutions.   In November 1998, Singo signed a promissory note and mortgage to

River Valley Financial Bank ("RVFB") for $159,000.00 for the benefit of Cart and his wife.

The note was secured by Singo's house on Mulberry Street and the property upon which the

Carts' house was being built.  That mortgage was released by RVFB early in 2000.

3

Prior to the release of the mortgage, Singo deeded her residence to the Trust, with Singo as the Trustee of the Trust. Singo signed a promissory note and mortgage to RVFB for $80,000.00 in March 2000, which was again secured by her house on Mulberry Street. Those funds were obtained by Singo, and the proceeds were lent to Cart, who used them to purchase lots in the River Bluff addition. Later in 2000, Singo signed a promissory note and mortgage to RVFB for $78,000.00, which was secured by both her house and the previously purchased lots in River Bluff, with the proceeds to be used by Cart to purchase more lots in the River Bluff addition. The mortgage for the $80,000.00 note through RVFB ultimately was released on November 17, 2004.

On June 3, 2004, Singo signed a promissory note and mortgage to Encore for $180,000.00. The note was again secured by her home on Mulberry Street. This transaction is the subject of the current appeal. The current holder of the note is Deutsche Bank.

In anticipation of the closing on the mortgage, Singo transferred her property from the Trust to herself individually via quitclaim deed on May 18, 2004. On May 28, 2004, however, Singo executed a warranty deed conveying the property back to the Trust and reserved a life estate for herself. A title search performed in connection with the closing did not reveal the May 28, 2004 warranty deed nor was that transfer disclosed to Encore.

Singo met with Fred Shimfessel ("Shimfessel") for the first time on June 3, 2004 about the mortgage that is the subject of this appeal. Shimfessel was an independent mortgage broker, who was contacted to help Singo obtain a loan. Shimfessel operated as Shimfessel Incorporated d/b/a Mite Federal Mortgage. Shimfessel "shopped around" Singo's

4

loan application with three lenders before settling on Encore. Singo's loan was the first and only transaction Shimfessel engaged in with Encore. Singo never had contact with Encore pertaining to the note; her only contact was with Shimfessel prior to entering into the loan agreement.

Shimfessel signed a Broker Agreement with Encore the day after the closing on Singo's mortgage. The agreement was standard for the industry and Shimfessel had signed identical agreements with other lenders. By the terms of the agreement, Shimfessel was authorized to take mortgage applications on behalf of Encore, perform a prequalifying analysis for prospective borrowers, collect financial information from borrowers, and initiate verifications and appraisals. Additionally, Shimfessel was authorized to help prospective borrowers understand transactions and clear credit problems and maintain regular contact with the prospective borrowers. In signing the agreement, Shimfessel promised to present applications consistent with Encore's standards and requirements. Encore retained absolute discretion in underwriting the mortgages.

The agreement explicitly states, "The relationship between the parties is an independent contractor relationship, and Broker is not, and shall not represent to third Parties that it is acting as, an agent for or on behalf of Encore." *Appellants' App.* at 564. Shimfessel was required to indemnify Encore for any breach of his representations or warranties, for failing to fulfill his promises under the agreement, or for any fraud in originating any mortgage loan. Shimfessel was to be responsible for his own costs and expenses per the agreement. Both Shimfessel, in his deposition, and Encore's representative, by affidavit,

5

stated that the relationship between Encore and Shimfessel conformed to the terms of the agreement at all times even though Shimfessel began to solicit loans for Encore before the broker agreement was signed.

Shimfessel completed Singo's loan application and she signed it. One of the figures contained in the loan application was Singo's income, a figure which she later challenged, but which was verified by Singo's employer. According to Shimfessel, however, the employment information was not necessary for Singo to obtain the loan as it was a "no-income" loan based on the value of the collateral and Singo's credit score.

Included with the loan and mortgage documents was a letter to Encore signed by Singo in which she indicated the loan proceeds would be used to construct homes. There was also a letter to Encore signed by Cart in which he indicated he would be building the homes. Shimfessel drafted the letters for the two to sign.

The loan application contained the representation that Singo would hold title to the property in the name of Singo, a single woman, in fee simple. One of the closing documents was a HUD-1 Settlement Statement indicating that $24,278.49 of the proceeds of the loan would be disbursed to Singo, with $51,082.98 disbursed to RVFB to pay off a prior mortgage, and $4,437.71 disbursed for aggregate points and closing costs. She also submitted an occupancy affidavit and financial status form in which she swore that her personal and financial status had not changed since completion of her loan application. She also completed an error correction agreement in which she promised to cooperate should there be an error at closing and assured the lender that marketable title of the Mulberry home

6

rested in her name. Further, a truth in lending disclosure statement was included wherein Singo acknowledged having read and received a complete copy of the disclosure.

After obtaining the funds from Encore, Singo gave some of the proceeds from the Mortgage to Cart. Singo's understanding was that Cart would be responsible for making the loan payments. However, there was no documentation memorializing an agreement to that effect. Shimfessel stated during his deposition that it was his understanding that Singo would be making the loan payments, and that he would not have participated in the transaction had he known that Cart intended to make the loan payments, because he would have been violating his duties to the lender.

Cart was unable to make the loan payments and Singo defaulted on the promissory note with Encore. Mortgage Electronic Registration Systems, Inc., as nominee for Encore, had been granted a security interest in the property and that mortgage was recorded on June 14, 2004. Deutsche Bank, as the current holder of the note, sent a letter to Singo on September 10, 2010 pursuant to the error correction agreement, asking Singo to stipulate to the validity of the mortgage, in an effort to correct the error in executing the mortgage in her individual capacity. The stipulation was not executed or filed with the trial court.

Deutsche Bank filed a foreclosure complaint against Singo individually and as trustee of the Trust. Singo, individually and as trustee of the Trust, filed an answer to the complaint, a motion to dismiss, and a counterclaim for fraud and prohibited lending. Singo and the Trust later filed for leave to file a third-party complaint against Shimfessel, Cart, and Encore as third-party defendants alleging fraud. After the filing of numerous responsive pleadings,

discovery, and pre-trial conferences, several motions for summary judgment and partial summary judgment were filed.

The trial court held a hearing on all of the pending motions and issued orders in resolution of them. In its November 3, 2011 order ("November 3 Order"), the trial court denied Singo's Indiana Trial Rule 12(B)(6) motion to dismiss. Further, the trial court granted Deutsche Bank's motion for summary judgment as to reformation of the mortgage and Singo's counterclaim. Summary judgment was also granted in favor of Deutsche Bank as to the promissory note and foreclosure of the mortgage security interest. Encore's motion for summary judgment was granted as to Singo's third-party complaint with the trial court concluding that Encore was not subject to Singo's damages claim. There was no finding as to Encore's motion for summary judgment against Shimfessel. Cart's motion for summary judgment was granted as to the first three counts alleged against him and Shimfessel in Singo's third-party complaint. As to Count IV, the remaining count alleging unjust enrichment, the trial court concluded that there were genuine issues of material fact as to the claims of express contract, implied contract, and quasi-constructive contract.

In the November 3 Order, the trial court concluded that no agency relationship existed between Encore and Shimfessel. The trial court characterized the controversy as involving two groups, with Singo, Cart, and Shimfessel in one group, and Encore and Deutsche Bank in the other. The trial court further concluded that there was no evidence that Encore and Deutsche Bank were involved in the Singo-Cart-Shimfessel relationship.

Singo filed a motion to correct error challenging the trial court's November 3 Order.

8

That motion was denied by order on January 5, 2012. On that same date, the trial court issued a comprehensive entry finding that Singo's Mortgage was reformed as a first priority properly perfected mortgage security interest.

## DISCUSSION AND DECISION

Singo appeals from the trial court's order granting summary judgment in favor of Deutsche Bank and Encore, and granting partial summary judgment in favor of Cart. Our standard of review on an appeal from a grant of summary judgment is the same as that of the trial court. *Barrow v. City of Jeffersonville*, 973 N.E.2d 1199, 1202 (Ind. Ct. App. 2012). We stand in the shoes of the trial court and apply a *de novo* standard of review. *Id*. We do not weigh evidence, but construe the facts in the light most favorable to the nonmoving party. *Baker v. Heye-America*, 799 N.E.2d 1135, 1139 (Ind. Ct. App. 2003). A trial court should grant summary judgment only when the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id*. Correspondingly, a court on review must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 1138-39. A party appealing the grant of summary judgment bears the burden of persuading the reviewing court that the trial court's ruling was improper. *Id*. at 1139.

The moving party, relying on specifically designated evidence, bears the burden of making a prima facie showing to the trial court that there are no genuine issues of material fact, and that the party therefore is entitled to judgment as a matter of law. *Id*. If the moving party meets those two threshold requirements, the burden then shifts to the nonmoving party

9

to set forth specifically designated facts showing that there is a genuine issue for trial. *Id*. A genuine issue of material fact exists where facts concerning a dispositive issue are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on that issue. *Id*. An issue is genuine for purposes of summary judgment, if a material issue of fact must be established by sufficient evidence in support of the claimed factual dispute to require a jury or judge to resolve the parties' differing versions at trial. *Id*.

A fact is material when it aids in the resolution of any of the issues involved. *Id*. While there may be conflicting facts on some elements of a claim, summary judgment remains appropriate when there is no dispute regarding facts that are dispositive of the matter being litigated. *Id*. Nonetheless, even when the facts are undisputed, the grant of summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id*.

On appellate review of the trial court's judgment, we are constrained to review only the evidence that has been specifically designated, and may not search the entire record. *Id*. The pleadings, affidavits, and testimony so designated are construed liberally in the light most favorable to the nonmoving party. *Id*.

**I. Summary Judgment as to Deutsche Bank**

Singo contends that the trial court erred by granting summary judgment in favor of Deutsche Bank and contract reformation because she claims there are genuine issues of material fact as to Deutsche Bank's status and standing as a holder in due course and whether there was mutual mistake such that contract reformation was proper. In general, Singo

claims that after Deutsche Bank purchased the loan it became "complicit in the fraud that created [the loan]." *Appellants' Br*. at 12.

Singo appears to argue that Deutsche Bank may not enforce the mortgage via foreclosure proceedings because the assignment of the mortgage was not recorded before the commencement of the foreclosure action. It is undisputed that Singo defaulted on the promissory note securing the mortgage. Deutsche Bank, as the current holder of the note,[2] sent a letter to Singo on September 10, 2010 pursuant to the error correction agreement, asking Singo to stipulate to the validity of the mortgage, in an effort to correct the error in executing the mortgage in her individual capacity. The stipulation was not executed or filed with the trial court. Deutsche Bank filed a foreclosure complaint against Singo individually and as trustee of the Trust on June 18, 2008. Singo, individually and as trustee of the Trust, filed an answer to the complaint, a motion to dismiss, and a counterclaim for fraud and prohibited lending.

Singo relies on Indiana Code section 32-29-1-8[3] to support her argument. She claims that the recording of the assignment affects whether Deutsche Bank had standing to foreclose on the mortgage. In *Rowe v. Small Business Administration*, 446 N.E.2d 991, 993 (Ind. Ct. App. 1983), we held that the recording provisions of a prior codification of the statute "were enacted to protect subsequent purchasers and mortgagees." We decline Singo's invitation to reconsider our holding in *Rowe*. Singo is not a subsequent purchaser or mortgagee,

---

[2] The mortgage was assigned to Deutsche Bank on June 6, 2008 and was recorded on June 20, 2008.

[3] Indiana Code section 32-29-1-8 addresses the assignment of mortgages and how they are recorded.

therefore, she lacks standing to bring this claim. "The failure to have the assignment recorded . . . would not render the assignment void . . . except as to subsequent purchasers." *Tulley v. Citizens' State Bank of Plainfield*, 47 N.E. 850, 852 (Ind. Ct. App. 1897). Thus, Deutsche Bank's act of recording the assignment after filing the foreclosure action against Singo does not affect the propriety of commencement of the foreclosure action.

Under Indiana Code section 26-1-3.1-301, a person entitled to enforce an instrument means, in part, the holder of the instrument, or a nonholder in possession of the instrument who has the rights of a holder. Indiana Code section 26-1-1-201(20)(A) defines a holder in relevant part as "a person in possession of a negotiable instrument that is payable either to bearer or an identified person if the identified person is in possession of the instrument . . . ." Indiana Code section 26-1-3.1-109(b)(2) states that a "promise . . . is payable to order if it is payable to the order of an identified person . . . ."

Here, the promissory note obligated Singo to pay $180,000.00 to Encore. *Appellants' App*. at 391. Encore subsequently endorsed the check "pay to the order of IMPAC Funding Corporation." *Id*. at 395. Deutsche Bank came into possession of the promissory note as trustee for the "Holders of IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2004-3" via an assignment of mortgage and note from MERS, as nominee for Encore. *Id*. at 283. Thus, Deutsche Bank was a person entitled to enforce the Singo promissory note and mortgage, because as trustee of IMPAC it had the rights of IMPAC to whom the promissory note was made payable to order. Further, Deutsche Bank had received an assignment of the both the note and mortgage as trustee of IMPAC.

12

It is uncontradicted that Deutsche Bank is the current holder of the note and that Singo defaulted on the note. The assignment of a note secured by a mortgage operates *pro tanto* as an assignment of the mortgage. *Egbert v. Egbert*, 226 Ind. 346, 351, 80 N.E.2d 104, 106 (1948). Consequently, Deutsche Bank had standing to bring the mortgage foreclosure action notwithstanding its subsequent recording of the assignment.

Singo also claims that Deutsche Bank is not a holder in due course and states the defense of fraud in support of that challenge. Singo does not allege that Deutsche Bank engaged in fraud; rather, she argues that the fraud on the part of Cart, Shimfessel, and Encore somehow relieves her of her obligations under the note and mortgage. Indiana Code section 26-1-3.1-305(a)(1)(C) provides in relevant part as follows:

> Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to . . . a defense of the obligor based on . . . fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms . . . .

> We stated as follows in *S. Cent. Bank of Daviess Cnty. v. Lynnville Nat. Bank*,

> The Official Comment to UCC section 3-35(a)(1)(C)(sic.)[4] stresses that the 'fraud' defense referred to by that subsection is 'real' or 'essential' fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due course. The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document . . . . The test of the defense is that of excusable ignorance of the contents of the writing signed.

901 N.E.2d 576, 583 n.3 (Ind. Ct. App. 2009).

---

[4] The correct citation is UCC section 3-305(a)(1)(iii), now codified at I.C.§ 26-1-3.1-305(a)(1)(C).

13

Singo's argument fails because she testified that she knew she was executing a note and mortgage obligating her to repay a $180,000.00 loan. Furthermore, as explained more fully below, the trial court correctly granted summary judgment in favor of Cart and Encore on Singo's fraud allegations. Therefore, the defense of fraud is not available to Singo.

Singo argues that Deutsche Bank is not a holder in due course because it was aware that the loan was fraudulent, delinquent, and in foreclosure when it acquired the loan. Looking to the designated evidence, however, Singo's claim fails and the entry of summary judgment by the trial court was proper.

Indiana Code section 26-1-3.1-302 provides in pertinent part that a holder of an instrument is a holder in due course if the following is true:

> 1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument:
>
> (A) for value;
> (B) in good faith;
> (C) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series. . . .

Among the evidence designated by Deutsche Bank is an affidavit by Kevin Kerestes, Assistant Vice-President of Bank of America, N.A. ("BANA"). BANA is the servicing agent for loans and the loan at issue in this appeal. The affidavit states that Deutsche Bank took the instrument, i.e., the mortgage, for value in good faith, and without notice of any defenses, including fraud. This affidavit is uncontroverted by any evidence designated by Singo.

14

Singo claims that Deutsche Bank knew that the loan was fraudulent, delinquent, and in foreclosure. The evidence designated by Singo to support that argument is her statement that the mortgage was signed without a notary and "later forged with a notary seal." *Appellants' Br.* at 13. Nevertheless, the promissory note and mortgage at issue do not show any apparent evidence of the fraudulent action required to defeat a finding that Deutsche Bank is a holder in due course. Furthermore, there is no designated evidence in the record to establish that Deutsche Bank had notice of the alleged fraud before it took possession of the instruments. The fact that Singo admittedly was previously delinquent in her payments, but that payments were made to bring the loan current, does not establish that the loan was overdue when Deutsche Bank became the holder, or that Deutsche Bank had notice of the fact it was overdue in the event that it was. Summary judgment was properly entered in Deutsche Bank's favor.

Singo further challenges the trial court's reformation of the contract. Singo argues that she executed the promissory note and mortgage in her individual capacity, not as trustee of the Trust, and that since she was not the owner of the property at the time the mortgage was executed, she is not liable for the indebtedness. The trial court found that the mortgage should be reformed to include assent by the Trust.

> A court of equity has jurisdiction to reform written documents. However, reformation is an extreme equitable remedy to relieve the parties of mutual mistake or of fraud. A mistake of law, a mistake as to the legal import of language used, will not normally support a claim for reformation of an instrument. Reformation is appropriate only in limited circumstances: (1) where there is a mutual mistake such that the written instrument does not reflect what the parties truly intended; and (2) where there has been a mistake

15

on the part of one party accompanied by fraud or inequitable conduct by the other party.

*Peterson v. First State Bank*, 737 N.E.2d 1226, 1229 (Ind. Ct. App. 2000) (internal citations omitted).

In cases involving mutual mistake, the party seeking reformation must establish the true intentions of the parties to an instrument, that a mistake was made and was mutual, and that the instrument does not reflect the true intentions of the parties. *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind. 1994). Reformation overcomes the presumption that the written instrument expresses the parties' intentions, meaning that it overcomes the Statute of Frauds. *Id*. at 160.

Here, the designated evidence shows that Encore, the predecessor in interest to Deutsche Bank, was to have a lien upon the fee interest in Singo's property. Singo executed a deed from Singo Trust to Singo individually on May 18, 2004. Singo testified that the transfer was done in anticipation of the loan transaction. Singo represented in her loan application of June 3, 2004 that she held title to the property in fee simple. She testified at deposition that she intended to give Encore a valid mortgage on the property and that she knew Encore would not have given her a loan of $180,000.00 without being granted a valid mortgage. Nevertheless, for some inexplicable reason, Singo signed a deed on May 28, 2004, returning the property to the Trust, while reserving a life estate for her benefit. The designated evidence establishes that Singo intended to give Encore a mortgage in her property sufficient to support the $180,000.00 loan. Encore expected to receive a mortgage in fee simple to that property in exchange for the loan. If Singo intended to act honestly in

16

entering into this transaction, the May 28, 2004 deed was executed by mistake, and her failure to disclose it was premised on her misunderstanding of the significance of the transfer on the transaction. "Rational assertions of fact and reasonable inferences therefrom are deemed to be true." *Burke v. Capello*, 520 N.E.2d 439, 440 (Ind. 1988), *abandoned on other grounds by Vergara by Vergara v. Doan*, 593 N.E.2d 185 (Ind. 1992). Singo refused to cure the defect in the mortgage by interlineation pursuant to the error correction agreement. The trial court did not err by reforming the mortgage because the designated evidence supports the conclusion that there was a mutual mistake.

Assuming for the sake of argument that Singo only intended to mortgage her life estate in the property, reformation remains an appropriate remedy that would support summary judgment in Deutsche Bank's favor. If Singo intended only to mortgage her life estate, then she provided false or misleading information in her loan application. Singo agreed to provide true and correct information in her loan application. Such evidence would support a finding of unilateral mistake because Encore intended to secure the mortgage by a fee simple interest in the property. Singo's failure to disclose her later deed of the property to the Trust coupled with the information supplied on the loan application would support a finding of inequitable conduct on the part of Singo. In sum, the trial court did not err by finding that reformation of the mortgage was necessary and proper.

Reformation of the mortgage is not prejudicial to the Trust. Singo is the settlor, trustee, and sole beneficiary, during her lifetime, of the Trust. As trustee, Singo had the

17

power to mortgage an interest in the trust property. Ind. Code § 30-4-3-3(a)(9). Reformation of the mortgage is not unfair to the Trust.

## II. Summary Judgment as to Encore

Singo alleges that the trial court erred by granting summary judgment as to Encore and Shimfessel. As an initial matter, we observe that Shimfessel did not file a motion for summary judgment. The record reveals that Shimfessel filed his answer to Singo's third-party complaint naming him as one of the third-party defendants. Encore filed a cross-claim against Shimfessel in which it alleged breach of the broker agreement and indemnification in the event that Singo was found to be entitled to relief from Encore. Encore filed a motion for summary judgment on Singo's third-party complaint and on its cross-claim against Shimfessel. In the November 3 Order, the trial court stated in pertinent part as follows:

> 5.      Encore's Motion for Summary Judgment against the Third-party Complaint filed by Singo is granted and Encore is not subject to the damages claim asserted by Singo. Having made this finding *the Court makes no finding on Encore's Motion for Summary Judgment against Shimfessel.*

*Appellants' App*. at 630 (emphasis supplied). Thus, it appears that there was no entry granting summary judgment in favor of Shimfessel. Consequently, we limit our review to the challenge of the trial court's grant of summary judgment in favor of Encore on Singo's third-party complaint alleging fraud.

Singo contends that Encore is liable to her for damages because of the agency relationship between Encore and Shimfessel. Singo claims that the existence of an agency

18

relationship is a question of fact that should not be decided by summary judgment and that the trial court erred by explicitly finding that no agency relationship existed.

It is correct that the existence of an agency relationship is a question of fact that in general should be decided by a trier of fact. *Demming v. Underwood*, 943 N.E.2d 878, 884 (Ind. Ct. App. 2011). However, if the evidence is undisputed, summary judgment on the issue may be appropriate. *Id*. Agency has been defined as a relationship resulting from the manifestation of consent by one party to another party to act as the agent for the consenting party. *Id*. The following three elements must be shown in order to establish the existence of an agency relationship: (1) manifestation of consent by the principal; (2) acceptance of authority by the agent; and (3) control exerted by the principal over the agent. *Id*. The elements of an agency relationship may be proven by circumstantial evidence. *Id*. Further, there is no requirement that the agent's authority to act be in writing. *Id*.

Encore filed a cross-claim against Shimfessel in which it made the following allegation:

> 6. At no time has Shimfessel, Shimfessel Incorporated or Mite acted as an agent for Encore.

*Appellants' App*. at 152. The broker agreement, which was designated by Encore, contained the following language:

> The relationship between the parties is an independent contractor relationship, and Broker is not, and shall not represent to third Parties that it is acting as, an agent for or on behalf of Encore.

*Id*. at 564. Furthermore, Encore designated the affidavit of Joe McKnight ("McKnight"), Encore's chief legal officer, which included the following averments:

19

5.      The relationship between Encore and Shimfessel at all times relevant to the making of the Loan was evidence solely by that certain broker agreement dated as of June 4, 2004 (the "Broker Agreement"), signed by both Encore and Fred Shimfessel ("Shimfessel"), a true and correct copy of which is attached as Exhibit A to the Encore Responses filed in the within action on November 26, 2008.

6.      In 2004, and at all times relevant to the making of the Loan, it was standard business practice for Encore to enter into an oral arrangement with prospective brokers in order to enable such Brokers to begin processing and gathering information and paperwork respecting a prospective borrower's transaction. From Encore's business records, it is clear that Shimfessel had such an arrangement with Encore respecting Singo's application for the Loan, but that Shimfessel's formal contract with Encore, i.e., the Broker Agreement, was actually signed and entered into between Encore and Shimfessel as of June 4, 2004, contemporaneously with the closing of the Singo loan.

*Id.* at 445. In addition, the designated materials included Shimfessel's deposition testimony as follows:

Q:      And per this Agreement or your understanding, were you an agent of Encore or just an Independent Contractor?

A:      Just an independent loan broker is what I was.

*Appellee's App.* at 7.

In response to Encore's cross-claim against him, Shimfessel answered the specific allegation that he at no time acted as an agent for Encore as follows:

2.      [Shimfessel] denies the allegation contained in paragraph 6 of the cross claims[.]

*Appellant's App.* at 163. This, Singo argues, establishes a genuine issue of material fact regarding Shimfessel's agency status. Singo also directs our attention to Shimfessel's deposition testimony, which is as follows:

20

Q:     Yes.  When did you get the preliminary authorization from Encore to proceed with the scavenger hunt?

A:     First week of May.  I mean it says-the next day.  It was that- -(pause)

Q:     That quick?

A:     That quick because they're competing and to- I never compete against all these other lenders.  She had the –she fit the mold to sell it on the secondary mortgage and – (pause)

*Appellee's App*. at 10.  From this testimony, Singo concludes that there was an agency relationship between Encore and Shimfessel because he did not compete against other lenders; therefore, Encore is liable for any fraud Shimfessel may have committed.

As an initial matter we observe that conclusory statements are generally disregarded in determining whether to grant or deny a motion for summary judgment.  *LaCava v. LaCava*, 907 N.E.2d 154, 166 (Ind. Ct. App. 2009).  Arguably, both the allegation in the cross-claim and Shimfessel's specific denial of that allegation are conclusory statements; however, there is other designated evidence that sheds light on the issue of agency and the trial court's determination thereon.

The broker agreement entered into between Encore and Shimfessel explicitly states that Shimfessel would act as an independent contractor.  Further provisions of the Broker Agreement set forth Shimfessel's duty to indemnify Encore in the event he breached that agreement.  McKnight's affidavit also states that Encore's practice was to enter into oral agreements with independent brokers until such time as a loan application was submitted.  At that time a formal, written agreement was entered into between Encore and the broker,

21

Shimfessel. Shimfessel stated in his deposition that per both the broker agreement and his understanding, he was an independent loan broker.

The deposition testimony designated by Singo could be interpreted a number of ways due to the lack of clarity of the statements. One interpretation could be that Shimfessel never competed against other lenders because he was Encore's agent. Another interpretation could be that Shimfessel abided by the term of the Broker Agreement to avoid predatory lending practices, and that he did not compete with them, i.e., other predatory lenders. Whatever facts might be gleaned from that testimony, however, is not material in the sense that it does not aid in the resolution of the issue of agency.

Singo's designation of testimony indicating that Encore solicited Shimfessel to submit loan applications to them, that Shimfessel used Encore's forms, that he followed Encore's direction about what needed to be filed, and that he remained in contact with Encore about the loan, is not material to the issue of an agency relationship because it does not show that his actions were controlled by Encore. The record shows that Shimfessel determined how to market his services, which applicants he solicited, and determined which loan applicants should be connected with particular lenders. Shimfessel testified that he "shopped around" Singo's loan application to other lenders prior to settling on Encore.

In sum, the trial court did not err by finding and concluding that there was no agency relationship between Encore and Shimfessel. Encore as the moving party met its burden of establishing that there was no genuine issue of material fact and that it was entitled to

judgment as a matter of law. As the non-movant, Singo failed to meet her burden of establishing a genuine issue of material fact on the issue of an agency relationship.

Encore filed a motion for summary judgment on Singo's third-party complaint against Encore. Singo argued that Encore had engaged in constructive fraud because it benefited from the sale of Singo's promissory note, which was acquired through Shimfessel's purportedly fraudulent activities.

> Constructive fraud arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud. The five elements of constructive fraud are: (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentation of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party. A plaintiff alleging the existence of constructive fraud has the burden of proving the first and last of these elements. The duty mentioned in the first element may arise by virtue of the existence of a fiduciary relationship. Once the plaintiff meets the burden of proof with respect to these two elements and establishes the existence of a fiduciary relationship, the burden shifts to the defendant to disprove at least one of the remaining three elements by clear and unequivocal proof.

*Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011) (internal citations and quotations omitted).

Since the trial court correctly concluded there was no agency relationship between Encore and Shimfessel, the trial court also correctly found that Encore was not liable to Singo on her damages claim. Singo failed to meet her burden of proving the first element of her constructive fraud claim against Encore.

### III. Fraud Claim Against Cart

23

In response to Encore's foreclosure action, Singo filed a third-party complaint against Cart alleging one count each of actual fraud, constructive fraud, unauthorized control, and unjust enrichment. The trial court denied Cart's motion for summary judgment as to the unjust enrichment count because of the genuine issues of material fact surrounding the nature of the relationship between the two. Singo argues that there are genuine issues of material fact precluding summary judgment on the fraud claims as well and that the trial court's entry of summary judgment on those claims was erroneous.

The elements of actual fraud are as follows: (1) a material representation of past or existing facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused injury to the complaining party. *Tru-Cal, Inc. v. Conrad Kacsik Instr. Sys., Inc.*, 905 N.E.2d 40, 44-45 (Ind. Ct. App. 2009). The trial court correctly concluded that there were no genuine issues of material fact which would preclude summary judgment on Singo's claim of actual fraud. The trial court found, and the record shows, that Singo and Cart engaged in several transactions that were similar in nature. The transaction at the heart of this appeal differs in one major respect, *viz.*, Cart was unable to provide Singo with payments to be applied against the mortgage taken on Singo's house. On the previous occasions, Cart had been able to make the payments, the promissory notes securing the mortgages were satisfied, and the two were able to share in some profit.

The documents relied upon by Singo to support her claim of actual fraud against Cart do not create a genuine issue of material fact. The HUD Settlement Statement and the Loan

Application make no reference to Cart and do not contain a material representation of past or existing facts made by him which was false. The letter written by Cart indicates that Cart was building two spec homes for Singo, with a completion date of Labor Day with a construction cost of $125,000.00. Singo's letter contains her statement that she was using some of the cash to pay off a loan for two lots and expresses the intent to build spec homes for sale at a later date. The trial court did not err by entering summary judgment in favor of Cart on this count of Singo's third-party complaint against him.

Likewise, Singo's constructive fraud claim fails. Singo, as the plaintiff alleging the existence of constructive fraud, has the burden of proving the first and last elements thereof, i.e., Cart had a duty to Singo by virtue of his relationship with her, and that Cart gained an advantage at Singo's expense. *See Demming*, 943 N.E.2d at 892. Assuming without deciding that Singo could meet her burden, there is clear and unequivocal proof that Cart has met his burden on at least one of the remaining three elements of constructive fraud. The undisputed evidence of the history of Cart and Singo's business relationship shows that Singo mortgaged her residence several times and loaned Cart the money to purchase lots and construct homes for sale. The transaction in dispute, which was not documented, but involved an oral agreement per their pattern of conduct, is consistent with the history of that relationship. The fact that Cart ultimately was unable to succeed in his part of this transaction does not establish a deceptive material misrepresentation of past or existing facts or that Cart remained silent when a duty to speak exists. The trial court did not err by granting summary judgment in favor of Cart on Singo's allegation of constructive fraud.

25

Singo also alleged that Cart exerted unauthorized control over $180,000.00 of Singo's property. Although that count of her complaint incorporates other paragraphs of her complaint, Singo, as the nonmovant on Cart's motion for summary judgment, was required to designate evidence in support of the allegations of her complaint. Here, Singo's position was not supported by evidence beyond her pleading. Although this court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party, this does not mean that the nonmoving party may rest upon the allegations of her pleadings. *McDonald v. Lattire*, 844 N.E.2d 206, 212 (Ind. Ct. App. 2006). Once the movant designates evidence to support a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, only those facts alleged by the nonmoving party and supported by affidavit or other evidence must be taken as true. *Id*. The record reveals that Singo has not designated other evidence to support this claim. The trial court did not err by entering summary judgment in favor of Cart on this count.

Affirmed.

NAJAM, J., and MAY, J., concur.