

FILED

Apr 13 2020, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Jerry E. Smith
Jerry E. Smith, Attorney CPA, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mike Dow and Midwest Logging and Veneer, *Appellants-Defendants,* v. John Hurst and Linda Hurst, *Appellees-Plaintiffs.* | April 13, 2020 |
| | Court of Appeals Case No. 19A-PL-1709 |
| | Appeal from the Morgan Superior Court |
| | The Honorable Peter R. Foley, Judge |
| | Trial Court Cause No. 55D01-1608-PL-1257 |

**Mathias, Judge.**

[1] Mike Dow ("Dow") d/b/a Midwest Logging and Veneer appeals the judgment of the Morgan Superior Court in favor of John Hurst and Linda Hurst in the Hursts' action for trespass and conversion. On appeal, Dow presents three issues, which we restate as:

I.    Whether the trial court clearly erred in concluding that Dow was liable for the actions of independent contractors;

II. Whether the trial court clearly erred in awarding the Hursts damages in the amount of $80,826.47; and

III. Whether the trial court abused its discretion in the admission of alleged hearsay evidence.

We affirm.

## Facts and Procedural History

The facts most favorable to the trial court's judgment[1] reveal that the Hursts own approximately fifteen acres in Morgan County, Indiana. On this heavily wooded land is the Hursts' home, a garage, a barn, and other smaller outbuildings. The property is bordered on the north side by land owned by the Andrews family.[2] On June 30, 2015, Mr. Andrews entered into a Timber Purchasing Contract ("the Contract") with Dow to purchase timber on the Andrewses' land. Pursuant to this Contract, Dow and the Andrews would split the proceeds from the logging equally, but with a minimum guarantee of $4200 to be paid to the Andrews. Prior to logging, Dow walked the property with Mr. Andrews. Dow also spoke with Linda Hurst, who told him to make sure the

---

[1] Dow's statement of facts is replete with references to evidence that is favorable to his position, e.g., his own trial testimony, but which is not favorable to the judgment reached by the trial court. We remind counsel for Dow that the Statement of Facts contained in an Appellant's Brief must be "stated in accordance with the standard of review appropriate to the judgment or order being appealed." Ind. Appellate Rule 46(a)(6)(b).

[2] The first names of the Andrews family members are not contained in the transcript. The exhibits admitted at trial indicate that Mr. Andrews's name is William but give no name for Mrs. Andrews. As necessary, we simply refer to them as Mr. Andrews or Mrs. Andrews.

logging took place north of the Andrews-Hurst property line. John Hurst had previously placed metal posts along the property line to demark the boundary.

[4] Dow contracted with Robert Parker to cut down the trees and harvest the timber, and Robert Parker hired his grandson James Parker to assist him in cutting down the trees and removing them from the property. Dow also contracted with two others to run a skidder and cut trees.

[5] While the trees were being harvested, Mr. Hurst heard the sound of chainsaws that appeared to be coming from his property. He investigated and determined that trees were being cut on his side of the property line. Mr. Hurst instructed the logger to stop but permitted him to finish felling the tree he was cutting. Mr. Hurst then informed Dow that no trees should be taken from the Hurst property. Mr. Hurst pointed out the boundary markers to Dow. Despite this, Mr. Hurst later observed trees being harvested from his property and again instructed Dow to stay off his property.

[6] The cutting activity caused significant damage to the Hurst property, including the loss of trees, erosion, and ruts caused by heavy equipment. It also left stumps and tree debris on the property. The Hursts hired Duane McCoy ("McCoy"), a forester with the Indiana Department of Natural Resources ("DNR") to assess the damage to their property. McCoy determined that trees harvested from the Hurst property included nine tulip poplar, eight hickory, five black walnut, five white oak, three red oak, three sugar maple, two ash, two black oak, two American beech, one Chinkapin oak, one American sycamore,

and one red maple. McCoy estimated that these forty-two trees contained 17,521 board feet of lumber with a total value of $6,248.47. The Hursts also hired Mark Allison ("Allison"), the owner of Allison Farms, Lawn and Landscaping Services, to provide an estimate of the cost of remediating the damage done to the Hurst property. Allison estimated that it would cost $74,578 to clean up tree debris by cutting all fallen tree tops, chipping limbs and scattering the chips, sawing and stacking wood, cleaning up debris in the creek that runs on the property, and raking the ruts left by the logging equipment.

[7] On August 11, 2016, the Hursts filed a complaint against Dow alleging trespass and conversion and seeking treble damages under Indiana Code section 25-36.5-1-3.2. A bench trial was held on February 13, February 15, and March 28, 2019. At trial, the trial court permitted Mrs. Hurst to testify as to what Dow subcontractor James Parker told her. On June 26, 2019, the trial court entered findings of fact and conclusions of law in favor of the Hursts, which provided in relevant part as follows:

## II. FINDINGS AND CONCLUSIONS

\* \* \*

12. Hurst observed Dow's crew again cutting and removing trees from the Hurst property. At the second meeting John Hurst reiterated to Dow that he didn't want Dow or his crew on his property.

13. Hurst has met his burden of proof as to the claims of trespass and conversion. The evidence establishes that Dow's crew entered and cut trees on Hurst's property. The crew left damage to the real estate (ruts from their skidder and erosion) and left

several tree tops and other debris on the Hurst property. The crew also removed several Hurst trees during the harvest. At no time did Dow or his crew have permission or authority to enter upon the Hurst property or harvest trees from Hurst's property. The area of the trespass is depicted on the Drapalik survey. The Area of Disturbance is consistent with the observations of the Court on its site visit and as depicted in the photographs entered into evidence.

14. Dow claims that he did not convert or trespass, but that any liability for the Hursts' claims should be borne by the individual members of his crew; the Parkers and the Bixlers. Dow claims that the Parkers and the Bixlers are independent contractors and as a result he is not liable for their actions.

15. Dow has a non-delegable duty not to cut or cause to be cut timber he has not purchased. Pursuant to [Ind. Code] 25-36.5-1-1 Dow is a "Timber Buyer". It is unlawful for a Timber Buyer to cut or cause to be cut or appropriate any timber not purchased by the Timber Buyer. I.C. 25-36.5-1-4(b). A Timber Buyer who violates Section 4 commits a Class A Misdemeanor. I.C. 25-36.5-1-10.

16. As a general rule, a principal is not liable for the negligence of an independent contractor; however, an exception to the general rule exists where the principal is obligated by law or contract with performing a specific duty. *Bagley v. Insight Communications Co., LP.*, 658 N.E.2d 584, 586 (Ind. 1995). This exception applies to Dow. Dow has a legal duty and obligation as a Timber Buyer to not cut or cause to be cut timber he has not purchased. In this instance, Dow cut Hurst's timber without purchasing Hurst's timber. Under the Timber Buyer Statute (I.C. 25-36.5-1) Dow is not permitted to transfer his duties under the statute to his crew, whether they be deemed to be employees or independent contractors.

17. Having concluded that Dow is liable for the trespass and conversion, the Court next turns to the issue of damages. There

are two (2) separate categories of damages presented by the evidence. First is the value of the timber harvested from Hurst's property by Dow, and second are the damages resulting from the trespass (removal of tree tops/debris and restoration).

18.  The measure of damages in a case of injury to real property depends upon whether the damages are temporary or permanent. *Sheek v. Mark A. Morin Logging, Inc.*, 993 N.E.2d 280, 288 (Ind. [Ct.] App. 2013). The injury is permanent when the cost of restoration exceeds the market value of the land before the injury. For a permanent injury, the measure of damages is the difference between the fair market value of the property before and after the injury, based upon a theory that economic waste occurs when the cost of restoration exceeds the economic benefit. If the injury is temporary, then the measure of damages is the cost of repair.

19.  Here, the Court must conclude that the injury is temporary. There is no evidence that the remediation costs exceed the fair market value of the Hurst real estate. The Hurst real estate consists of two (2) separate tax parcels. The Court considers the Hurst real estate to be one (1) integrated parcel of real estate for this specific analysis. Based upon the tax assessment value, the Hurst real estate has a total assessed value for real estate taxes of $257,900.00. John Hurst estimated the value of the real estate to be between $500,000.00 to $600,000.00. The estimated cost to [] restore the damage to the Hurst real property was estimated to be $74,578.00. The value of the real estate clearly exceeds the cost to restore.

20. The Court determines the value of Hurst's timber cut and harvested by Dow to be the sum of $6,248.47, as calculated by Duane McCoy.

21.  The only credible evidence offered as to the cost to restore the Hurst party was the Allison Farms Lawn & Landscaping Services, LLC estimate. James Parker did testify that he would do the work to remove the tops of [trees] on the Hurst property and restore the damage for about $5,000.00 to $7,000.00. The

Court does not find James Parker's testimony to be credible. This only leaves the Allison Farms estimate as the evidence of the cost to restore the Hurst property. Dow failed to provide the Court with any credible evidence to the contrary. The Court determines that the cost to restore the damage to the Hurst real estate caused by Dow's trespass to the sum of $74,578.00.

22. The total damages suffered by Hurst is the sum of $80,826.47.

23. Hurst's claims for treble damages and attorney's fees are denied, as Hurst is not entitled to the damages under I.C. 25-36.5-1-3.2.

### III. Judgment

24. A judgment is granted in favor of John Hurst and Linda Hurst and against Mike Dow and Midwest Logging and Veneer in the sum of $80,826.47, plus costs in the sum of $191.00, for a total judgment in the sum of $81,017.47. Interest to accrue at the statutory rate until paid in full.

Appellant's App. pp. 18–20 (record citations omitted).

## Standard of Review

[8] In cases where the trial court enters findings of fact and conclusions of law, our standard of review is well settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly

erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*RCM Phoenix Partners, LLC v. 2007 E. Meadows, LP,* 118 N.E.3d 756, 759–60 (Ind. Ct. App. 2019) (quoting *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 652 (Ind. Ct. App. 2012)), *trans. denied*. "Moreover, '[w]e may affirm a judgment on any legal theory, whether or not relied upon by the trial court, so long as the trial court's findings are not clearly erroneous and support the theory adopted.'" *Id.* at 760.

## I. *Liability for Actions of Independent Contractors*

[9] Dow first claims that the trial court erred by holding him liable for the actions of the independent contractors[3] he hired to harvest the timber. Dow notes that there is no evidence that he assisted in the felling of the trees on the Hurst property and that he therefore cannot be held responsible for what the independent contractors did.

---

[3] Dow argues at length that the individuals he hired to harvest the timber were independent contractors, and not Dow's employees or agents. The trial court agreed that the harvesters were independent contractors but concluded that the independent contractor defense was inapplicable under these circumstances—a conclusion that we affirm *infra*.

[10] Dow correctly notes the long-standing rule in Indiana that a principal will generally not be held liable for the negligence of an independent contractor. *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017) (citing *Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995)). There are, however, five exceptions to this general rule: (1) where the contract requires the performance of intrinsically dangerous work; (2) *where the principal is by law or contract charged with performing the specific duty*; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Bagley*, 658 N.E.2d at 586 (emphasis added).

[11] The Hursts argued, and the trial court agreed, that the second exception applied here because Indiana Code chapter 25-36.5-1 (the "Timber Buyers Act") imposed on Dow a non-delegable duty not to harvest timber from property without permission of the property owner. Section 4 of the Timber Buyers Act provides that "[i]t shall be unlawful and a violation of this chapter . . . [f]or any timber buyer to cut or cause to be cut or appropriate any timber not purchased." Ind. Code § 25-36.5-1-4(b). A person who violates any of the provisions of chapter 25-36.5-1 commits a Class A misdemeanor, or a Level 6 felony if the person has a prior conviction under this chapter. Ind. Code § 25-36.5-1-10.

[12] The trial court concluded that, even though Dow hired independent contractors to perform the actual cutting and harvesting of the trees, Dow was charged by Indiana Code section 25-36.5-1-4(b) to perform a specific duty, i.e., not to cut or cause to be cut or appropriate any timber not purchased. We agree.

[13]     Section 4 of the Timber Buyers Act clearly imposes a duty on timber buyers to not "cut or cause to be cut or appropriate any timber not purchased." *Id.* Violation of this duty is not only a violation of the Timber Buyers Act but is also "unlawful." *Id.* We therefore conclude that Section 4 of the Timber Buyers Act imposes a specific duty on timber buyers, such as Dow, and that the second exception to the general rule that a principal will not be held responsible for the negligence of an independent contractor is applicable. Accordingly, the trial court did not err in holding Dow responsible for the acts of his independent contractors, i.e., for trespassing on the Hurst property and harvesting timber from their land.[4]

[14]     Dow nevertheless argues that the Timber Buyers Act is inapplicable because the Hursts did not ask the DNR to bring an adjudicative proceeding under Indiana Code section 25-36.5-1-3.2, which provides in relevant part:

> (b)  The department **may** under IC 4-21.5-3-8 commence a proceeding against a timber buyer or a timber cutter if there is reason to believe that:
>
>> (1)  the timber buyer or timber cutter has acquired timber from a timber grower under a written contract for the sale of

---

[4] Dow argues that the trial court erred in relying on our supreme court's opinion in *Bagley* in support of its conclusion that Dow cannot avail himself of the independent contractor defense. Dow contends that *Bagley* was limited to cases in which a principal sought to avoid liability for physical harm by using independent contractors to perform tasks that pose a particular risk of physical harm to others. Even if we were to agree with Dow that *Bagley* is inapposite, we nevertheless agree with the trial court's conclusion that Section 4 of the Timber Buyers Act imposes a particular duty on principals such that the independent contractor defense is unavailable to Dow under these circumstances.

the timber without payment having been made to the timber grower as specified in the contract; or

(2) if:

> (A) **there is no written contract for the sale of the timber**; or

> (B) there is a written contract for the sale of the timber but the contract does not set forth the purchase price for the timber;

the timber buyer or timber cutter has cut timber or acquired timber from the timber grower without payment having been made to the timber grower equal to the value of the timber as determined under IC 26-1-2.

(c) A proceeding **may** be commenced under this section at the request of a timber grower.

(d) The necessary parties to a proceeding initiated under this section are:

(1) the timber grower; and

(2) the timber buyer or timber cutter.

* * *

(f) The complaint served under IC 4-21.5-3-8 to commence a proceeding under this section may seek the following:

(1) Damages in compensation for damage actually resulting from the wrongful activities of a timber buyer or timber cutter.

(2) Damages equal to three (3) times the stumpage value of any timber that is wrongfully cut or appropriated without payment.

* * *

(j)   A final agency action in a proceeding under this section must address all issues of damage and responsibility and, after the completion of the opportunity for judicial review, may be enforced in a civil proceeding as a judgment.

Ind. Code § 25-36.5-1-3.2. (emphases added)

[15]   First, we are not convinced that this statute governs the situation before us. This statute appears to be concerned with situations where the timber cutter or buyer and the property owner have come to an agreement, either a written or unwritten contract. *See* I.C. § 25-36.5-1-3.2(b)(1), (2). It does not explicitly apply to situations, such as the one before us, where a timber cutter or buyer trespasses onto the land of a person with whom the cutter or buyer has no contract. *Cf.* Ind. Code § 25-36.5-1-17 (predecessor statute, repealed in 1993, providing for treble damages if a person, or an agent of a person, "cuts or causes to be cut any timber which the person, or a representative of the person has not previously purchased . . . .").

[16]   More importantly, even if Section 3.2 is applicable, and the Hursts could have asked the DNR to conduct an adjudicative proceeding against Dow and his subcontractors, there is nothing in this statute suggesting that such an adjudicative action is the *exclusive* avenue of relief for land owners whose trees have been harvested without their permission. The plain language of Section 3.2 states that the DNR "may" conduct an adjudicative proceeding if it believes that the buyer has acquired timber without payment. It also states that proceedings under this section "may" be commenced at the request of a timber

grower, such as the Hursts. The use of this permissive language indicates that this statute is not intended to be the exclusive avenue of relief. Otherwise, if the DNR declined to conduct such an adjudicative proceeding, a property owner would be without remedy.

[17] To hold that a landowner must request that the DNR conduct an adjudicative proceeding against a timber buyer before the landowner can seek recovery for the wrongful taking of timber would be to read language into the statute that is simply not there. It would also place a serious impediment to the common-law remedies of trespass and conversion. We have explained before:

> [S]tatutes in derogation of common law will be strictly construed, particularly when the statute affects a common-law right or duty. We presume that when the legislature enacts a statute, it is aware of the common law and does not intend to make any change in it beyond what it declares either in express terms or by unmistakable implication. Thus, in cases of doubt, we will construe a statute as not changing the common law.

*Demming v. Underwood*, 943 N.E.2d 878, 888 (Ind. Ct. App. 2011) (citing *Bartrom v. Adjustment Bureau, Inc.*, 618 N.E.2d 1, 10 (Ind. 1993)), *trans. denied*.

[18] Because Section 3.2 does not explicitly provide that it is the exclusive remedy for the taking of timber from a landowner's property without the landowner's permission, we do not construe this statute as a limitation on the common-law remedies of trespass and conversion in situations, such as the present case, where a timber buyer, or his agents, have trespassed and taken timber from a landowner without the landowner's permission.

[19] In summary, the trial court did not err by concluding that Dow was responsible for the actions of his independent contractors because the Timber Buyers Act imposes a duty on Dow not to harvest, or cause to be harvested, timber he has not purchased.

## II. *Sufficient Evidence of Damages*

[20] Dow next contends that the Hursts failed to prove the number and types of trees that were taken from his property. Specifically, he argues that "[t]he Record in this case is devoid of any specificity as to what or which trees belonging to the Hursts, if any, were actually cut and removed by the independent contractors that were hired by Mr. Dow or MLV to log the Andrews property." Appellant's Br. at 32. Dow acknowledges that DNR forester McCoy testified that he identified forty-two trees that had been harvested, but Dow claims that McCoy did not testify that these trees were taken from the Hurst property. This is inaccurate. McCoy testified that he used the county GIS map, GPS, and the property markers placed by Mr. Hurst to determine whether the trees he cataloged were on the Hurst property. The Hursts also presented evidence of a survey of their property that showed the area of their property from which trees were harvested.

[21] Dow also claims that the trial court erred by awarding damages for both the value of the taken trees and the cost to remediate the damage to the Hurst property. There is some authority for this position. In *Hire v. Pinkerton*, 126 Ind. App. 23, 29, 127 N.E.2d 244, 247 (1955), the court held that "[w]here timber is destroyed by the wrongful act of another, the owner may bring an action *either*

for the value of the destroyed timber *or* for the injury to the real estate." (emphases added).[5] To the extent that *Hire* can be read to mean that damages for the taking of trees must be limited to *either* the value of the timber taken or the damage done to the real property, we disagree. The Hursts suffered two distinct injuries: (1) the taking of valuable timber; and (2) damage done to their real property caused during the taking of the timber. To limit them to only the value of the timber taken would leave them without remedy for damage done to the real property, i.e., the abandoned tree tops, stumps, and other debris, and the ruts caused by the logging equipment. And to limit them only to the cost of remediating the damage to the real property would leave them without a remedy for the value of the timber taken.

[22]  We agree with the trial court that the Hursts should be permitted to recover for both of these distinct damages. To hold otherwise would be to permit a windfall to the tortfeasor, permitting the tortfeasor to either profit from the value of the timber taken or shield the tortfeasor from liability for the injury to the real property caused by the taking of the timber. We therefore reject Dow's position

---

[5] The *Hire* court also noted that "where damages are sought for trespass on land, the action may be in two forms, (a) trespass *quare clausum fregit*, or (b) trespass *de bonis asportatis*[.]" *Id.* at 29, N.E.2d at 247. Trespass *quare clausum fregit*, which translated from Latin means, "why he broke the close," is "[a] person's unlawful entry on another's land that is visibly enclosed." *Trespass*, Black's Law Dictionary (11th ed. 2019). The tort of trespass *quare clausum fregit* consists of any of the following: "(1) entering on to land in the possession of another, (2) remaining on the land, or (3) placing or projecting any object on it." *Id.* In contrast, trespass *de bonis asportatis*, which translated from Latin means, "for carrying goods away," is "[a] wrongful taking of chattels." *Id.*

that the Hursts are limited to recover damages for *either* the injury to their real property *or* for the value of the timber taken.

[23] Dow next argues that the amount of damages awarded by the trial court was improper. We disagree because there was evidence supporting the trial court's calculation of damages. McCoy testified and presented evidence that the value of the trees taken from the Hurst property was $6,248.47. And Allison, who owned a landscaping company, estimated that it would cost $74,578 to remediate the damage caused by the logging. Dow notes that James Parker testified that he could restore the Hurst property for considerably less than the Allison estimate, between $5,000 and $6,000, and that the disparity between the restoration estimates should render Allison's estimate suspect. But the trial court specifically found Parker's testimony unworthy of credit, and Dow's argument is nothing more than a request that we reweigh the evidence and judge the credibility of witnesses, which we will not do.

[24] Dow also contends that the Hursts cannot recover damages for the cost to remediate their property unless they can also show a diminution in the value of the property before and after the logging, citing case law from other jurisdictions for support. In Indiana, however, the measure of damages of injury to real property

> depends on whether the injury is permanent or temporary. Permanent injury to unimproved land occurs where the cost of restoration exceeds the market value before the injury. If the injury is permanent, the measure of damages is limited to the difference between the fair market value of the property before

and after the injury, based on the rationale that economic waste results when restoration costs exceed the economic benefit. But if the injury is temporary, the proper measure of damages is the cost of repair.

*Sheek v. Mark A. Morin Logging, Inc.*, 993 N.E.2d 280, 288 (Ind. Ct. App. 2013) (citations and internal quotation marks omitted).

[25] Here, Mr. Hurst testified that his property was worth approximately $500,000 to $600,000, and the estimated cost to restore the property was $74,578. The cost to restore the property is much less than the market value of the property, and the injury to the property is not permanent. Therefore, the trial court correctly determined that the cost of restoration is the proper measure of damages. We also reject Dow's claim that the cost to restore the Hurst property was unreasonable compared to the value of the property. As noted, Mr. Hurst testified that his property was worth up to $600,000. The cost of restoring the property was $74,578, which is only 12.43% of $600,000. We do not consider this unduly excessive.

### III. Admission of Evidence

[26] Lastly, Dow argues that the trial court abused its discretion by permitting Mrs. Hurst to testify as to what independent contractor James Parker told her regarding what Dow told Parker.[6] Dow claims that this testimony was

---

[6] Dow contends that the inadmissible hearsay included a statement by an unknown logger to Mr. Hurst that Dow informed him to harvest trees on a side of a ridge that included the Hurst property. But Dow

inadmissible hearsay. Questions regarding the admission or exclusion of evidence lie within the sound discretion of the trial court, and we will not disturb the trial court's decision absent a showing of an abuse of that discretion. *Kimbrough v. Anderson*, 55 N.E.3d 325, 333–34 (Ind. Ct. App. 2016), *trans. denied*. A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* at 334.

[27] Hearsay is defined by Indiana Evidence Rule 801(c) as "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible.[7] Ind. Evidence Rule 802. There are, however, some out-of-court statements offered to prove the truth of the matter asserted that are excluded from the definition of hearsay. Specifically, Indiana Evidence Rule 801(d)(2) provides that a statement is not hearsay if the statement is offered against a party opponent and "(C) was made by a person whom the party authorized to make a statement on the subject" or "(D) was made by the party's

---

acknowledges that the trial court *sustained* his hearsay objection to this testimony. *See* Appellant's Br. at 13 ("Judge Foley correctly sustained hearsay objections to Mr. Hurst's testimony as to the alleged statements that were made to him by an unknown logger. But, Judge Foley allowed the hearsay testimony by Mrs. Hurst."). We therefore consider only the alleged hearsay that the trial court admitted over Dow's objection, i.e., the statements made by James Parker to Mrs. Hurst.

[7] Even if hearsay, Mrs. Hurst's testimony was not hearsay-within-hearsay or "double hearsay" because Dow's statements to Parker were the statement of a party opponent and therefore not hearsay as defined by Indiana Evidence Rule 801(d)(1). See Ind. Evidence Rule 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

agent or employee on a matter within the scope of that relationship and while it existed." Evid. R. 801(d)(2)(C), (D).

[28] Dow argues that these provisions are inapplicable to the statements made by Parker. The Hursts argue that Parker's statements were not hearsay because they were made by Dow's agent or employee on a matter within the scope of that relationship and while it existed. We need not decide whether Parker's statements were hearsay because, assuming *arguendo* that they should have been excluded, the admission of the statements was, at most, harmless error. As we stated in *Kimbrough*:

> Even if an evidentiary decision is an abuse of discretion, we will not reverse if the ruling constituted harmless error. An error is harmless when the probable impact of the erroneously admitted or excluded evidence on the factfinder, in light of all the evidence present, is sufficiently minor so as not to affect a party's substantial rights.

55 N.E.3d at 334.

[29] Here, Mrs. Hurst testified that James Parker told her that "he was instructed [by Dow] to get what logs were already cut, even though he was told not to [by the Hursts]." Tr. Vol. 3, pp. 17–18. We fail to see how this brief statement prejudiced Dow's substantial rights. The trial court did not mention this statement or rely upon it in its findings and conclusions. There was other evidence showing that trees were harvested from the Hurst property, and Dow's liability was not based on the fact that he told Parker to take logs that had already been cut. It was based on the fact that the trees were felled in the first

place. We therefore conclude that the admission of Parker's statement to Mrs. Hurst was harmless.

## Conclusion

[30] The trial court properly concluded that Dow was responsible for the actions of his independent contractors because the Timber Buyers Act imposes a duty on Dow not to harvest, or cause to be harvested, timber he has not purchased. The trial court also did not err in awarding the Hursts damages for both the cost to restore their damaged property and for the value of the trees taken from their property, and there was sufficient evidence to support the trial court's award of damages. Lastly, any error in the admission of a statement alleged to be hearsay was harmless. We therefore affirm the judgment of the trial court.

[31] Affirmed.

Kirsch, J., and Bailey, J., concur.